# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DATASCAPE, INC., )
a Georgia Corporation, )
)          Civil Action File No.:
    Plaintiff, )          No. 1:09-CV-0136-CC
)
v. )          **JURY TRIAL DEMANDED**
)
SPRINT SPECTRUM, L.P. )
    a Delaware Limited Partnership, and )
)
SPRINT SOLUTIONS, INC. )
    A Delaware Corporation, )
)
Defendants. )
)

## DATASCAPE, INC.'S RESPONSE IN OPPOSITION TO SPRINT SPECTRUM, L.P. AND SPRINT SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CERTAIN OF DATASCAPE'S PATENT CLAIMS FOR FAILURE TO COMPLY WITH 35 U.S.C. § 112 ¶ 2

## TABLE OF CONTENTS

**PAGE**

I.  **INTRODUCTION**................................................................................1

II. **FACTUAL BACKGROUND**...........................................................4

    A.   The Patents-in-Suit.....................................................................4

    B.   Procedural Background..............................................................5

    C.   Claim Terms Accused of Being Indefinite.............................7

III. **LEGAL ARGUMENT AND CITATION OF AUTHORITY**.................10

    A.   Defendants Must Prove By Clear and Convincing Evidence
        That the Datascape Claims Are Not Amenable to Construction
        Or Are Insolubly Ambiguous..................................................10

        1.   Any "Close" Question of Fact Must Be Resolved In
            Datascape's Favor......................................................10

        2.   Datascape's Claim Terms are Presumed Definite....................11

        3.   All Claim Terms are Amenable to Construction and
            No Claim Term is Insolubly Ambiguous.................................11

    B.   The Datascape Claims are Not Improperly Drawn to a Method
        And an Apparatus......................................................................13

        1.   Claim 1 of the '269 Patent and Claim 1 of the '845
            Patent Do Not Claim "the Method of Communicating"...........13

        2.   Claims 1, 97 and 98 of the '259 Patent Do Not Claim "the
            Method of Executing"...............................................................20

        3.   Claims 35 and 45 of the '269 Patent Are Not Indefinite..........21

i

4.    Datascape's System Claims Are Not Drawn to
      Both a Method and an Apparatus...........................................27

C.    Claims Drawn to Client Programs and Claims Including
      A Client Program Web Server Recite Sufficient Structure.................28

1.    A Client Program is Structure....................................................28

2.    Claims Incorporating a Client Program Without Limiting
      The Device Upon Which the Client Program Can Execute
      Are Not Indefinite...................................................................31

3.    A Web Server Is Structure........................................................33

D.    None of the Remaining Claim Terms Identified by Sprint are
      Indefinite.................................................................................34

1.    Extended................................................................................37

2.    Non-Standard I/O Device.........................................................41

3.    Client Program........................................................................45

4.    Coupled/Coupling and Communicatively Coupling................47

5.    Telephone and Screen Phone...................................................48

6.    Computer................................................................................53

IV.   CONCLUSION...........................................................................54

30337267.2

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                **PAGE**

*Acacia Media Techn. Corp. v. New Destiny Internet Group,*
   405 F. Supp.2d 1127 (N.D. Cal. 2005)........................................................29

*Atmel Corp. v. Information Storage Devices, Inc.,*
   198 F.3d 1374 (Fed.Cir. 1999).................................................................2, 29

*Affymetrix, Inc. v. Hyseq, Inc.,*
   132 F.Supp.2d 1212 (N.D. Cal. 2001)...................................................28, 33

*Aloft Media, LLC v. Adobe Systems, Inc.,*
   570 F.Supp.2d 887 (E.D. Tex. 2008).....................................................28, 33

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,*
   262 F.3d 1258 (Fed. Cir. 2001)...................................................................50

*Billingnetwork Patent, Inc. v. Cerner Physician Practice, Inc.,*
   No. 8:04-CV-1515-T-27MAP, 2006 U.S. Dist. LEXIS 5995,
    (M.D. Fla. Feb 1, 2005).................................................................2, 29, 32

*BJ Servs. V. Halliburton Energy Servs., Inc.,*
   338 F.3d 1368 (Fed. Cir. 2003)...................................................................10

*Collaboration Properties, Inc. v. Tandberg ASA,*
   No. 05-01940, 2006 WL 1752140 (N.D. Cal. June 23, 2006).....................18

*Collegenet, Inc. v. XAP Corp.,*
   442 F.Supp.2d 1036 (D. Or. 2006)........................................................17, 18

*Datamize, LLC v. Plumtree Software, Inc.,*
   417 F.3d 1342 (Fed. Cir. 2005)............................................................12, 35

*Datascape v. Kyocera Wireless Corp.,*
   Civil Action No. 1:05-CV-1651-CC...............................................................5

*Datascape v. Sony Ericsson Mobile Communications (USA), Inc.,*
    Civil Action No. 1:05-CV-3317.......................................................................5

*Datascape v. Sprint Spectrum, L.P. and Sprint Solutions, Inc.,*
    Civil Action No. 1:07-CV-0640-CC.............................................................5

*Datascape v. UTStarcomm, Inc. and Personal Communications Devices, LLC,*
    Civil Action No. 1:05-CV-3164-CC.............................................................5

*Fargo Electronics, Inc. v. Iris, Ltd., Inc.,*
    287 Fed. Appx, 96 (Fed. Cir. 2008)............................................................25

*Genetech, Inc. v. Chiron Corp.,*
    112 F.3d 495 (Fed.Cir. 1997).......................................................................53

*Group One, Ltd. V. Hallmark Cards, Inc.,*
    407 F.3d 1297 (Fed. Cir. 2005)...................................................................25

*Halliburton Energy Services, Inc. v. M-I LLC,*
    514 F.3d 1244 (Fed. Cir. 2008)..............................................................44, 46

*Hoffer v. Microsoft Corp.,*
    405 F.3d 1326 (Fed. Cir. 2005)..............................................................24, 25

*Honeywell Int'l, Inc. v. ITC,*
    341 F.3d 1332 (Fed. Cir. 2003)..................................................3, 11, 12, 34

*In re Baxter,*
    656 F.2d 679 (C.C.P.A. 1981)......................................................................53

*In re King,*
    801 F.2d 1324 (Fed. Cir. 1986)....................................................................23

*In re Schreiber,*
    128 F.3d 1473 (Fed.Cir. 1997)...............................................................1, 15

*In re Swinehart,*
    439 F.2d 210 (C.C.P.A. 1971)..........................................................1, 15, 18

iv

*In re Tarczy-Hornoch,*
  397 F.2d 856 (U.S. Ct of Cust. & Pat. App. 1968).......................................23

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
  430 F.3d 1377 (Fed. Cir. 2005).......................................13, 14, 16, 18, 19, 20

*Jeneric/Pentron, Inc. v. Dillon Co.,*
  171 F.Supp.2d 49 (D. Conn.2001)................................................................19

*Microprocessor Ehancement Corp. v. Texas Instruments Inc.,*
  520 F.3d 1367 (Fed. Cir. 2008)............................................................16, 18

*North Am. Vaccine, Inc. v. American Cyanide Co.,*
  7 F.3d 1571 (Fed. Cir. 1993).................................................................2, 29

*Novo Industries, L.P. v. Micro Molds Corp.,*
  350 F.3d 1348 (Fed. Cir. 2003).......................................................23, 24, 25

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,*
  806 F.2d 1565 (Fed. Cir. 1986).................................................................13

*Pall Corp. v. Micron Separations, Inc.,*
  66 F.3d 1211 (Fed. Cir. 1955)...................................................................22

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005).................................................................12

*Ricoh Co., Ltd. V. Katun Corp., PNA,*
  486 F.Supp.2d 395 (D.N.J. 2007).........................................................14, 27

*Tandberg,*
  No. 05-01940, 2006 WL 1752140..............................................................20

*Toshiba Corp. v. Juniper Networks, Inc.,*
  No. 03-1035-SLR, 2006 WL 1788479 (D. Del. June 28, 2006)...............1, 15

v

*Trading Tech. Int'l v. Espeed, Inc.,*
   No. 04 C 5312, et al., 2006 WL 3147697 (N.D. Ill. Oct. 31, 2006)........28, 33

*Versata Software, Inc. v. SAP America, Inc.,*
   No. 2:07-CV-153, 2009 WL 1408520 (E.D. Tex. May 19, 2009)..........29, 33

*Verve, LLC v. Crane Cams, Inc.,*
   311 F.3d 1116 (Fed. Cir. 1999)................................................................2, 29

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.,*
   870 F.2d 1546 (Fed.Cir. 1989)......................................................................19

*Yodlee, Inc. v. CashEdge, Inc.,*
   No. 05-01550, 2006 WL 3456610 (N.D. Cal. Nov. 29, 2006)...............14, 19

*Young v. Lumenis, Inc.,*
   492 F.3d 1336 (Fed.Cir. 2007).........................................3, 10, 11, 12, 34, 47

## STATUTES                                                                 PAGE

37 C.F.R. § 1.75(c)...........................................................................................26

35 U.S.C. § 112 ¶ 2.............................................................................1, 12, 19

35 U.S.C. §§ 254, 255.....................................................................................24

35 U.S.C. § 282.........................................................................2, 11, 22, 34

Fed. R. Civ. P. 38(a).......................................................................................10

Fed. R. Civ. P. 56...........................................................................................10

U.S. Const. Amend. VII..................................................................................10

## BOOKS                                                                    PAGE

1 MOY'S WALKER ON PATENTS, § 4:102 (4th Ed. 2009)…….........................22, 26

MANUAL OF PATENT EXAMINING PROCEDURE § 2173.05(g) (8th ed., 2001,
   rev. 2005)................................................................................................17, 26

Robert L. Harmon, PATENTS AND THE FEDERAL CIRCUIT § 5.5 (c)
   (7th Ed. 2005)...............................................................................................10

30337267.2

## JOINT EXHIBITS ("JX")[1]

| Exhibit Number | Description |
| --- | --- |
| 1. | United States Patent Number 5,742,845 |
| 2. | Prosecution History of United States Patent Number 5,742,845 |
| 3. | United States Patent Number 5,905,908 |
| 4. | Prosecution History of United States Patent Number 5,905,908 |
| 5. | United States Patent Number 6,366,967 |
| 6. | Prosecution History of United States Patent Number 6,366,967 |
| 7. | United States Patent Number 6,684,269 |
| 8. | Prosecution History of United States Patent Number 6,684,269 |
| 9. | United States Patent Number 6,745,259 |
| 10. | Prosecution History of United States Patent Number 6,745,259 |
| 11. | United States Patent Number 6,907,476 |
| 12. | Prosecution History of United States Patent Number 6,907,476 |
| 13. | Special Master's May 7, 2008 Report and Recommendation on Claim Construction Regarding U.S. Patent Nos. 5,742,845, 5,905,908, 6,366,967, 6,684,269, 6,745,259 and 6,907,476 |
| 14. | Special Master's December 12, 2008 Report and Recommendation on the Construction of "Data" |

---

[1] The abbreviation "PX" is used throughout to refer to each "Plaintiff's Exhibit" attached to this brief. The abbreviation "JX" is used throughout to refer to each "Joint Exhibit" filed with the parties Notice of Filing Joint Exhibits (Dkt. No. 38).

## I.   <u>INTRODUCTION</u>

Defendants Sprint Spectrum, L.P. and Sprint Solutions, Inc. (collectively referred to as "Defendants" or "Sprint") advance several arguments, claiming that certain claims and claim terms of Plaintiff Datascape, Inc. ("Datascape") patents should be found indefinite pursuant to 35 U.S.C. § 112 ¶ 2. However, Sprint fails to prove, by clear and convincing evidence, that any claim or claim term is not amenable to construction or is insolubly ambiguous. As such, Sprint is not entitled to the relief it seeks.

First, Sprint alleges that the patents-in-suit include claims impermissibly drawn to both a method and an apparatus.  Sprint's argument fails as it is based on an incorrect application of the single case Sprint cites in support of this argument. Certain of the Datascape patent claims include active functional limitations as part of the language describing a system or apparatus. This does not make them indefinite. "A patent applicant is free to recite features of an apparatus either structurally or functionally." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997) (citing *In re Swinehart*, 439 F.2d 210, 212 (C.C.P.A. 1971)). Consequently, courts have upheld the use of "active functional language instead of passive language to describe the functions of the underlying apparatus." *See Toshiba Corp. v. Juniper*

*Networks, Inc.*, No. 03-1035-SLR, 2006 WL 1788479, at *4 (D. Del. June 28, 2006).

Second, Sprint asserts that claims drawn to client programs or web servers are indefinite because they lack sufficient structure. On this point Sprint is also wrong. "The determination of whether a claim is invalid for indefiniteness depends on whether those skilled in the art would understand the scope of the claim when read in light of the specification." *Billingnetwork Patent, Inc. v. Cerner Physician Practice, Inc.*, No. 8:04-CV-1515-T-27MAP, 2006 U.S. Dist. LEXIS 5995, at *46-47 (M.D. Fla. Feb. 1, 2005) (citing *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 119-20 (Fed. Cir. 2002); *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (citing *North Am. Vaccine, Inc. v. American Cyanide Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993))). In the case of the challenged client program and web server claims, the terms have a particular structure and meaning recognizable to a person of ordinary skill in the field of computer systems and networking.  *See* Affidavit of William O. Putnam Regarding Indefiniteness in the Matter of Datascape, Inc. v. Sprint Spectrum, L.P. and Sprint Solutions, Inc. ("Putnam Aff.") at ¶¶ 27, 40, 45.

Last, Sprint claims that a variety of other claim terms are indefinite. Datascape's patent claims are presumed valid, however. 35 U.S.C. §282. In

addition, Datascape's claim terms are also presumed to be definite. *Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). Thus, the claim terms at issue are indefinite only if Defendants present clear and convincing evidence that the terms at issue are not amenable to construction or are "insolubly ambiguous." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007). In this case, all but one of the claim terms that Sprint accuses as being indefinite have been construed by this very Court, demonstrating that these terms are amenable to construction and are not insolubly ambiguous. The claim term that has not been construed ("extended"), is also amenable to construction and not "insolubly ambiguous." Indeed, at the time of the parties' Joint Claim Construction Statement, Sprint did not indicate an intent to argue that the term is indefinite. *See* Joint Claim Construction Statement, Exhibit C – Sprint's 6.3(b)2 Proposed Claim Constructions With Identifications of References (Dkt. No. 36-4) at 4.

As will be described in more detail herein, Sprint fails to show by clear and convincing evidence that Datacape's claims and claim terms are indefinite. Therefore, Datascape respectfully submits that Sprint's motion for summary judgment should be denied.

3

## II.   FACTUAL BACKGROUND

### A.   The Patents-in-Suit

Datascape filed its first patent application in June 1995, which led to United States Patent Nos. 5,742,845, 5,905,908, 6,366,967, 6,684,269, and 6,745,259 ("patents-in-suit").  *See, e.g.*, Complaint (Dkt. No. 1) Exhibits A through E. These patents-in-suit disclose "transaction and data systems which may be implemented on an open network such as the Internet." JX "1," United States Patent No. 5,742,845 ('845) patent, 5:35-36. Before the patents, the Internet "suffer[ed] from a number of limitations which preclude[d] its effective use as a transaction or data system which uses non-standard I/O terminals and devices." '845 patent, 3:40-44.

The patents-in-suit describe an invention that includes communication by non-standard I/O devices across the Internet, achieved through use of extended open network protocols specific to those non-standard I/O devices:

> the system of the present invention is implemented by extending present open network communication protocols and data message formats to communicate with nonstandard I/O devices either coupled to an open network as a client or coupled to an open network through a client, such as a PC, credit card terminal, screen phone, or PDA. That is, commands which are compatible with the communication schema of a presently –implemented protocol for the Internet are used and additions are made to commands implemented within the control structure of that existing protocol to support non-standard I/O device communication.

'845 patent, 5:48-58.

4

### B.      Procedural Background

On or about March 20, 2007, Datascape filed the lawsuit styled *Datascape v. Sprint Spectrum, L.P. and Sprint Solutions, Inc.*, Civil Action No. 1:07-CV-0640-CC ("Sprint I"), asserting that Sprint had infringed U.S. Patent No. 6,907,476.  The parties in Sprint I initially provided the Court with a list of fifteen (15) disputed claim terms.  (Sprint I Docket No. 42-2 at Ex. A.) Following the issuance of the Special Master's Report and Recommendation on Claim Construction Regarding U.S. Patent Nos. 5,742,845, 5,905,908, 6,366,967, 6,684,269, 6,745,259, and 6,907,476 (JX "13," "Special Master's Claim Construction Report") in the related matters *Datascape v. Kyocera Wireless Corp.*, Civil Action No. 1:05-CV-1651-CC, *Datascape v. Sony Ericsson Mobile Communications (USA), Inc.*, Civil Action No. 1:05-CV-3317, and *Datascape v. UTStarcom, Inc. and Personal Communications Devices, LLC*, Civil Action No. 1:05-CV-3164-CC, the parties to the Sprint I case jointly filed a stipulation with the Court that all claim terms in Sprint I "shall have the same definitions set-forth in the Special Master's May 7, 2008 Report and Recommendation on Claim Construction." (Sprint I Docket No. 61.) This dramatically reduced the claim terms at issue, and Special Master Peterson issued his Report and Recommendation in Sprint I construing the sole remaining term at issue, "data," on December 12, 2008 (JX "14," "Special

Master's 'Data' Claim Construction Report"). (Sprint I Docket No. 74.) The Court adopted the Special Master's Report and Recommendation in full. (Sprint I Docket No. 90.)

In the present case ("Sprint II"), Datascape has accused Sprint of infringing five (5) additional patents – all of which are at issue in the Kyocera, Sony Ericsson, and UTStarcom cases, and which share many of the claim terms at issue in Sprint I. In fact, these five patents share the same specification as the patent asserted against Sprint in Sprint I. In the Joint Claim Construction Statement, the parties identified thirty-nine (39) disputed terms. Joint Claim Construction Statement, Exhibit A - Parties' Proposed Claim Constructions (Dkt. No. 36-2). Seven (7) of these terms were previously at issue in Sprint I ("telephone," "data," "extended," "extended internet protocol statements," "client program…for processing extended internet protocol statements to support communication with the telephone over an open network," "extended open network protocol," and "non-standard I/O device"), although, because the parties stipulated to the constructions adopted in the Kyocera et al. cases, only one (1) of these terms ("data") was construed by Special Master Peterson in the Sprint I case. Sprint did not claim that any claim term was indefinite in Sprint I.

### C.    **Claim Terms Accused of Being Indefinite**

In this case, Sprint now asserts that seven claim terms are indefinite – all but one of which have already been construed by this Court in the related Kyocera, Sony Ericsson and UTStarcom matters. *See* JX "13," Special Master's Claim Construction Report. Specifically, Sprint claims that the following claim terms are indefinite:

Extended;

Non-standard I/O Device;

Client Program;

Coupled/Coupling/Communicatively Coupling;

Telephone and Screen Phone; and

Computer.

This Court previously construed these terms, other than "extended," as follows:

| Non-standard I/O Device | An input/output device that (1) either interfaces to a computer through a communications port that was not normally used for networks as of June 22, 1995, or has limited input and output capabilities, and (2) was not supported by open network protocols published or publicly available as of June 22, 1995, or earlier.

JX "13," Special Master's Claim Construction Report at 99. |
|---|---|

| Client Program | A program that requests or accesses services or resources from a server.<br><br>*Id.* at 257. |
|---|---|
| Coupled/Coupling | Connected/connecting directly or indirectly.<br><br>*Id.* at 133. |
| Telephone | A communication device that transmits and receives sound in the form of electrical signals. In the context of claims 9-15, 35, 38 & 41-42 of the '269 patent; and claims 97-104 of the '259 patent, an "extended Internet protocol" or "extended Internet protocol statements" are used to provide communication with the "telephone."<br><br>*Id.* at 146. |
| Screen Phone | A non-standard I/O device combining a telephone with a display screen.<br><br>*Id.* at 187. |
| Computer | A programmable electronic device that can accept, store, process and output data.<br><br>*Id.* at 183. |

In Sprint I, where it agreed to these constructions, Sprint never asserted that any of these terms or phrases was indefinite.

On August 24, 2009, the parties in the instant case filed their Patent Local Rule 6.3 Joint Claim Construction Statement (Dkt. No. 36). In that statement, the parties agreed "that the term 'client program,' as used in the claims of the

8

Datascape patents, should be construed to mean: 'a program that requests or accesses services or resources from a server.'" *Id.* at 2.  The parties also agreed that "'communicate,' as used in the claims of the Datascape patents, should be construed to mean: 'to transfer information among entities,'" and "'communicatively coupled' should be construed as the combination of the parties' agreed construction of the term 'Communicate' and the Court's construction of the disputed claim term 'Coupled.'" *Id.* at 3-4. Sprint did not indicate that it intended to challenge any of these terms as indefinite.  *See id.* Indeed, of the seven claim terms Sprint now claims are indefinite, Sprint only indicated that it was reserving its rights to bring a motion to find the claim terms "non-standard I/O device" and "coupled/coupling" indefinite. Joint Claim Construction Statement, Exhibit C – Sprint's 6.3(b)2 Proposed Claim Constructions With Identifications of References (Dkt. No. 36-4) at 1-2 ("non-standard I/O device"), 6 ("coupled/coupling"). For the other terms, Sprint simply offered a proposed construction different than Datascape's. *Id.* at 4 ("extended"), 6-7 ("telephone," "web server," "computer," and "screen phone").[2]

---

[2] The parties agree that the term "server" means "a programmed computer that provides access to services or resources by responding to requests from clients." Patent Local Rule 6.3 Joint Claim Construction Statement (Dkt. No. 36) at 6. The parties also agree that a "web server" is a program, but disagree with respect to the

## III.   LEGAL ARGUMENT AND CITATION OF AUTHORITY

### A.   Defendants Must Prove By Clear and Convincing Evidence That the Datascape Claims Are Not Amenable to Construction or Are Insolubly Ambiguous.

Datascape has a constitutional right to a jury trial.  U.S. Const. Amend. VII; Fed. R. Civ. P. 38(a) ("The right of trial by a jury as declared by the Seventh Amendment to the Constitution – or as provided by a federal statute is preserved to the parties inviolate."). This right can only be denied if there is no material fact in dispute. *See* Fed. R. Civ. P. 56; *BJ Servs. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) (holding definiteness "is amenable to resolution by the jury where the issues are factual in nature").

### 1.   Any "Close" Question Of Fact Must Be Resolved In Datascape's Favor

In deciding Sprint's motion for summary judgment, "the evidence of the nonmovant [*i.e.*, Datascape] is to be believed, and all justifiable references are to be drawn in his favor." *Young*, 492 F.3d at 1345 (citations omitted); Robert L. Harmon, PATENTS AND THE FEDERAL CIRCUIT § 5.5 (c) at 273 (7th Ed. 2005) ("Because of the presumption of validity, close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee.").

---

nature of that program. *See* Joint Claim Construction Statement, Exhibit A - Parties' Proposed Claim Constructions (Dkt. No. 36-2) at 5.

### 2. **Datascape's Claim Terms Are Presumed Definite**

Datascape's patent claims are presumed valid. 35 U.S.C. §282; *Young*, 492 F.3d at 1345 ("Because a patent is presumed valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing."). Datascape's claim terms are also presumed to be definite. *Honeywell*, 341 F.3d at 1338-39 ("Because a claim is presumed valid, a claim is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'") (internal citation omitted).

### 3. **All Claim Terms Are Amenable to Construction and No Claim Term Is Insolubly Ambiguous**

The claim terms at issue are indefinite only if Defendants present clear and convincing evidence that the terms at issue are not amenable to construction or are "insolubly ambiguous." *Young*, 492 F.3d at 1346 ("Claims are considered indefinite when they are 'not amenable to construction or are insolubly ambiguous. . . . Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning.") (internal citation omitted).

To make that determination, the Federal Circuit has "explained that 'in the face of an allegation of indefiniteness, general principles of claim construction apply.' In that regard, claim construction involves consideration of primarily the intrinsic evidence, *viz.*, the claim language, the specification, and the prosecution

11

history." *Young*, 492 F.3d at 1346 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc)).

However, extrinsic evidence, including expert testimony, may also be considered. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) ("[W]hile 'we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence,' such as expert testimony.") (quoting *Phillips*, 415 F.3d at 1324).

All reasonable means of construction must be employed in an effort to construe the terms at issue. *Honeywell*, 341 F.3d at 1338 ("It requires 'that the claims be amenable to construction, however difficult that task may be.'") (citation omitted); *Datamize*, 417 F.3d at 1347 ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.") (internal quotes and citation omitted).

The definiteness requirement of 35 U.S.C. §112, "does not compel absolute clarity. Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize*, 417 F.3d at 1347 (citations omitted); *See also*, *Young*, 492 F.3d at 1346 ("Akin to the term 'approximately,' a person having ordinary skill in the art would know where to make the cut; thus the use of the word 'near' does not

12

deprive one of ordinary skill from being able to ascertain where the cut should be made."); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986) ("The phrase 'so dimensioned' is as accurate as the subject matter permits, automobiles being of various sizes. As long as those of ordinary skill in the art realized that the dimensions could be easily obtained, § 112, 2d para. requires nothing more. The patent law does not require that all possible lengths corresponding to the spaces in hundreds of different automobiles be listed in the patent, let alone that they be listed in the claims.") (internal citation omitted).

> **B.** **The Datascape Claims Are Not Improperly Drawn to a Method and an Apparatus.**

> **1.** **Claim 1 of the '269 Patent and Claim 1 of the '845 Patent Do Not Claim "the Method of Communicating."**

Sprint mis-reads the holding of a single case – *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) – to make the argument that claim 1 of the '269 Patent and claim 1 of the '845 Patent are impermissibly drawn to both a method and an apparatus. In *IPXL*, the Federal Circuit upheld the district court's finding that the following claim was indefinite:

> The *system of claim 2* [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* at 1384 (emphasis original) (internal citation omitted). The Federal Circuit explained that, with such a claim, "it is unclear whether infringement . . . occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction."   *Id.* Because the claim recited both a system and a method for using that system, it was indefinite.

Many defendants have since tried to use *IPXL* to invalidate claims that include functional language like "communicating," which appears in the two Datascape system claims at issue, and have failed. As the court explained in *Ricoh Co., Ltd. v. Katun Corp., PNA*, 486 F. Supp.2d 395 (D.N.J. 2007):

> Recently, parties in several cases have asked district courts to find claims invalid under *IPXL*. In almost all cases, district courts have held that the suspect claims did not cover both an apparatus and a method, but rather were apparatus claims containing functional limitations. . . . These courts found that claims containing both a physical description of an apparatus and a description of the apparatus' function, e.g., "communicates," "populates," "configured to," and "upon activation," were not impermissible apparatus-method claims. Instead, these "claims simply use active language to describe the *capability* of the apparatuses; they do not claim the activity itself."

*Id.* at 402 (citations omitted) (quoting *Yodlee, Inc. v. CashEdge, Inc.*, No. 05-01550, 2006 WL 3456610, at *4 (N.D. Cal. Nov. 29, 2006)) (emphasis original).

14

"A patent applicant is free to recite features of an apparatus either structurally or functionally." *In re Schreiber*, 128 F.3d at 1478 (citing *In re Swinehart*, 439 F.2d at 212). Stated differently, courts have upheld the use of "active functional language instead of passive language to describe the functions of the underlying apparatus." *See Toshiba Corp.*, No. 03-1035-SLR, 2006 WL 1788479, at *4. Here, the challenged system claims do not recite methods; they employ permissible active functional language.  Claim 1 of the '269 Patent claims:

> A Internet processing system comprising:
>
> a Web server for communicating in an extended Internet protocol; and
>
> a plurality of input/output (I/O) devices coupled to the Web server through the Internet, the I/O devices communicating with the Web server in the extended Internet protocol that supports communication with non-standard I/O devices;
>
> wherein the extended Internet protocol further comprising:
>
>> tags for identifying one of the I/O devices and input operation to be performed with the one of the I/O devices;
>>
>> action attributes for defining the identified device operation to be performed with a local resource for one of the I/O devices; and
>>
>> method attributes for defining a data transfer method for providing data between the Web server and the I/O devices.

JX "7," at 19:65 to 20:16. Similarly, Claim 1 of the '845 Patent claims:

> An open network processing system comprising:

a server for communicating in an extended open network protocol; and

a plurality of input/output (I/O) devices coupled to said server through an open network, said I/O devices communicating with said server in said extended open network protocol that supports communication with non-standard I/O devices;

wherein said extended open network protocol further comprising:

tags for identifying one of said I/O devices and input operation to be performed with said one of said I/O devices;

action attributes for defining said identified device operation to be performed with a local resource for one of said I/O devices; and

method attributes for defining a data transfer method for providing data between said server and said I/O devices.

JX "1," at 20:20-38. The fact that these claims include an explanation that a functional limitation of the claimed system includes the ability to communicate in the claimed protocol does not make the system claim an improper apparatus-method claim. "The conclusion of *IPXL Holdings* was based on the lack of clarity as to when the mixed subject matter claim would be infringed." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (internal citation omitted). In the claims at issue in Sprint's motion, there is no mixed subject matter and there is no lack of clarity.

These claims describe systems which are running and operating in a steady-

16

state environment – waiting for and responding to input. There is no mention of an operator or user in either claim, and no indication in either claim of any steps or procedures that must be taken to start or configure the claimed systems.  Putnam Aff., ¶ 46.  A person of ordinary skill in the art reading claim 1 of the '269 patent and claim 1 of the '845 patent would read these claims as describing systems having a number of concurrently executing components, or subsystems, such as the servers and network devices described in the specification, along with client computers and devices such as personal computers and non-standard I/O devices, having the functional limitation of communicating and processing extended protocol statements in order to support communication between the servers and I/O devices.  *Id.* at ¶ 44.

Indeed, other courts have held that such language does not invalidate similar claims.  The holding in *Collegenet, Inc. v. XAP Corp.*, 442 F. Supp.2d 1036 (D. Or. 2006), is instructive.  In that case, the defendant challenged a claim that described the apparatus and included the functional limitations of that apparatus. The court explained:

> A "functional limitation" is "an attempt to define something by what it does, rather than by what it is (e.g., as evidenced by its specific structure or specific ingredients)." *Manual of Patent Examining Procedure* § 2173.05(g) (8th ed., 2001, rev. 2005). The *Manual* further states "there is nothing inherently wrong with defining some part of an invention in functional terms.  Function language does not,

in and of itself, render a claim improper." *Id.* (citing *In re Swinehart*, 439 F.2d 210, 213 (Fed. Cir. 1971) ("[N]ot every claim containing 'functional' terminology is broad. Indeed, in many cases it will be obvious that only a very limited group of objects will fall within the intended category.")).

*Id.* at 1062-63. In *Collegenet*, the challenged claim described "a system for creating and processing customized forms" and "automatically populating the fields." *Id.* at 1063. The court was persuaded by the distinction the plaintiff drew between a method requiring human activity and a functional limitation not influenced by human activity. In its analysis, the *Collegenet* court noted that the court in *IPXL* did not object to the phrase "the system predicts transaction information" because this phrase is "a functional limitation not influenced by human activity." *Id.  See also Collaboration Properties, Inc. v. Tandberg ASA*, No. 05-01940, 2006 WL 1752140, at \*6-7 (N.D. Cal. June 23, 2006) (rejecting defendant's claim of indefiniteness and noting that claim 1 of the patent in *IPXL*, which included the phrases "causing the display to display" and "enabling a user to use," was not found to be indefinite).   Accordingly, the court held that "the challenged Claims are not indefinite because they include descriptions of the apparatus and functional limitations associated with the apparatus as did the claims that passed muster in *IPXL*."   *Collegenet*, 442 F. Supp.2d at 1063.  *See also*, *Microprocessor Enhancement*, 520 F.3d at 1375 (holding that an apparatus claim

was not indefinited under *IPXL* where it was "clearly limited to a pipelined processor possessing the recited structure and *capable* of performing the recited functions" (emphasis original)); *Yodlee*, No. 05-01550, 2006 WL 3456610, at *4 ("The claim describes what happens 'upon activation of the presented link.' It does not seek to patent activation of the link; it seeks only to patent a device which performs certain functions if and when the link is activated. Infringement occurs when a device that has the capability of performing the steps described . . . is manufactured and sold.").

As in the cases discussed herein, the challenged claims here include active functional limitation language, not impermissible method claims mixed with system claims. The claim language describes the claimed system; it does not include "steps" of communicating.  Sprint's reference to later method claims which *do* describe the method of communicating is irrelevant. Those claims, contrary to Sprint's characterization in its brief, are not dependent claims (indeed, one of the referenced method claims is in a different patent – the '908 Patent). *See Jeneric/Pentron, Inc. v. Dillon Co.*, 171 F. Supp.2d 49, 58 (D. Conn. 2001) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989); 35 U.S.C. § 112) ("A dependent claim refers to at least one other claim in the patent, includes all of the limitations of the claim to which it refers, and specifies a

19

further limitation on that claim."). Therefore, Sprint has failed to demonstrate, by clear and convincing evidence, that the claims are indefinite.

### 2. Claims 1, 97 and 98 of the '259 Patent Do Not Claim "the Method of Executing."

As with its "communicating" argument, Sprint separately argues, for the same reason, that system claims using the term "executing" are drawn to both methods and apparatuses. Again, Sprint suggests that there is an executing "step" in claims 1, 97 and 98 of the '259 Patent, causing them to be improper system-method claims. Sprint confuses functional limitations of system claims with method language. *See Tandberg*, No. 05-01940, 2006 WL 1752140, at *6 ("Tandberg's position is incorrect because the disputed claim language recites the functionality of the claimed system rather than the act of using the system."). Because executing simply provides a functional limitation, *IPXL* does not apply, and Sprint has failed to show by clear and convincing evidence that claims 1, 97 and 98 of the '259 Patent should be found invalid.[3]

### 3. Claims 35 and 45 of the '269 Patent Are Not Indefinite.

---

[3] The court in *Tandberg* found the defendant's reading of *IPXL* so sweeping and broad that it would render invalid nearly every claim recited in that opinion. The court questioned whether Tandberg's attorney could reasonably believe that such a position would be correct. *Tandberg*, No. 05-01940, 2006 WL 1752140, at *7.

In Section IV. C. of its memorandum in support of its motion for summary judgment, Sprint contends that claims 35 and 45 of the '269 Patent are indefinite because they claim methods and apparatuses in a single claim. Sprint's argument appears to be in two parts. First, Sprint points to Datascape's use of the word "communicating" in its infringement contentions related to claim 35, and the phrase "may communicate" in the claim language, to improperly argue that a functional limitation somehow turns claims that are clearly system claims into method claims. Sprint's argument is simply unsupported based on the plain language of the claims in question and the law.  As discussed above, the use of active functional limitation language does not make a system claim a method claim.[4]

Second, Sprint seems to argue that the language of **_dependent_** claims changes the nature of independent claims 35 and 45 from system claims into method or impermissible system-method claims. In doing so, Sprint identifies six "method" claims that depend from independent system claims (claims 24, 25, 39,

---

[4] Sprint also makes an argument that suggests that the "client program" of claim 35 is either an indefinite claim term or a method "step."  Sprint's reading of claim 35 is confusing and nonsensical. To the extent Sprint argues that the claim term "client program" lacks structure, Datascape addresses that argument below. To the extent Sprint argues that the language "may communicate" creates a "method step" in claim 35, that argument is addressed above. Both premises fail.

40, 46 and 47), only two of which (46 and 47) depend from one of the independent claims Sprint argues are indefinite.[5] This argument is based on two faulty premises.

First, Sprint inappropriately seeks to impose limitations disclosed in the dependent claim on its corresponding independent claim. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1219 (Fed. Cir. 1995) (noting how "each claim is a separate statement of the patented invention") (internal citations omitted). Indeed, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims." 35 U.S.C. § 282; *see also* 1 MOY'S WALKER ON PATENTS, § 4:102 (4th Ed. 2009) ("As the name implies, independent claims are free-standing.  The scope of an independent claim can therefore be determined, at least in theory, by referring to that claim only and not to any other claims in the patent.") (internal citation omitted).  Even Sprint recognizes that the independent claims at bar cannot by themselves be viewed as method claims by acknowledging that claim 35 identifies a Web server, a telephone and a client program as part of the disclosed system, and that, on its face claim 35 "appears to claim the system as an apparatus." Sprint

---

[5] Claims 46 and 47 depend from claim 45. Claims 24 and 25 depend from claim 23; claims 39 and 40 depend from claim 38.  In this section of its brief, Sprint does not appear to be making any argument as to the definiteness of claims 23-25 or 38-40.

Memo. at 15. Thus, the Court should not impose limitations disclosed in the dependent claim on its corresponding independent claim.

Second, contrary to Sprint's unsupported statement that Datascape's describing the independent system claims as "methods" in the dependent claims "was neither inadvertent nor a mistake," it was exactly that. Therefore, Datascape requests that the Court use its inherent power to correct the error. *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1356 (Fed. Cir. 2003).

As permitted by law, the '269 patent has both independent system (apparatus) claims and independent method claims for using those systems. *See In re King*, 801 F.2d 1324, 1327 (Fed. Cir. 1986) ("a process claim, otherwise patentable, should not be rejected *merely* because the application of which it is part discloses apparatus which will inherently carry out the recited steps.") (emphasis in original) (citing *In re Tarczy-Hornoch*, 397 F.2d 856 (U.S Ct of Cust. & Pat. App. 1968)). Irrespective of whether the patent's independent claims were system or method claims, however, every dependant claim within the '269 patent disclosed one of the following inventions:

the method of claim [ ] wherein the extended Internet protocol statements are extended Hyper Text Transport Protocol (HTTP) statements.

the method of claim [ ] wherein the extended Internet protocol statements are extended Hyper Text Markup Language (HTML)

23

command statements.

The prosecuting attorney for the '269 patent affirms under oath that, with respect to the dependent system claims, the aforementioned language was a clerical error. Affidavit of David M. Lockman in Support of Datascape, Inc.'s Response in Opposition to Sprint Spectrum, L.P. and Sprint Solution, Inc.'s Motion for Summary Judgment of Invalidity of Certain of Datascape's Patent Claims for Failure to Comply with 35 U.S.C. § 112 ¶ 2 ("Lockman Aff.") at ¶¶ 7-9. Specifically, dependent system claims should have used the term "system" instead of "method." *Id.* at ¶ 9.

Errors in claim language arise from time to time. "Absent evidence of culpability or intent to deceive by delaying formal correction, a patent should not be invalidated based on an obvious administrative error." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005). In light of this truth, the current patent act allows the United States Patent and Trademark Office ("PTO") to issue a Certificate of Correction to alleviate certain errors within a patent. *See, e.g.*, 35 U.S.C. §§ 254, 255. In addition, courts can modify a patent's claim language to correct errors where a Certificate of Correction has not been issued. *Novo Industries*, 350 F.3d at 1356. Specifically, a court can alter the claim language when: "(1) the correction is not subject to reasonable debate based on

24

consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Industries*, 350 F.3d at 1357.  For example, in *Hoffer*, the district court found a dependent claim invalid under the indefinite statute because the claim depended on a claim number not within the patent. 405 F.3d at 1331. The Federal Circuit disagreed. In reversing the lower court, the Federal Circuit noted how the error was apparent on the face of the printed patent, and held that a patent should not be invalidated for such errors. *Id.*; *see, e.g., Fargo Electronics, Inc. v. Iris, Ltd., Inc.*, 287 Fed. Appx. 96, 102 (Fed. Cir. 2008) (noting how the "error must be evident on the face of the patent") (citing *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005)).  The court further noted that the correction is consistent with, and would not contradict, any statements within the patent's prosecution history. 405 F.3d at 1331.

The court should find that the claim language of dependent claims 36, 37, 46, and 47 is an obvious clerical error, and that the word "method" in each of these claims should be changed to "system." The requested correction of changing "method" to "system" is not subject to reasonable debate in light of the independent claims upon which they rely.  Each of the independent claims falls under the statutory classification of an apparatus: claim 35 claims a

"system for supporting communication between a Web server and a telephone over the Internet;" claim 45 claims a "system for supporting communication between a Web server and a personal digital assistant (PDA) over the Internet." *See* JX "7," '269 Patent at 24:63 – 25:4; 25:48 – 26:5. The prosecuting attorney crafted these claims to be system claims, and a person of ordinary skill in the art would read them as such. Lockman Aff., ¶¶ 5, 7-9; Putnam Aff., ¶¶ 47-48. Because valid dependent claims are system claims that incorporate all elements of the independent claim, and then add additional *system* elements, *see, e.g.*, 35 U.S.C. § 112, ¶ 4,[6] the error is obvious on the face of the patent.[7]

In addition, there is nothing within the prosecution history to suggest a different interpretation of the claims. The claims were originally drafted with the disclosed error. The PTO examiner for the patent did not reject the claims at issue for being indefinite, but only issued a non-statutory double patenting rejection. Lockman Aff., ¶ 13. Thus, the prosecution history is silent on the issue. Given also

---

[6]   *See also* 37 C.F.R. § 1.75(c) ("One or more claims may be presented in dependent form, referring back to *and further limiting another claim* or claims in the same application.").

[7]   The MPEP notes only one type of method claim that can properly depend on a system claim.  Such dependent claims are titled product-by-process claims. See MPEP § 608.01(n).  In particular, these dependent method claims state how to build the apparatus disclosed in the independent claim.  *Id.*; 1 MOY'S WALKER ON PATENTS, § 4:102.   As the dependent claims at issue cannot reasonably be

26

that the requested correction is not subject to reasonable debate, the Court should grant Datascape's request to correct the obvious clerical errors within the '269 patent.

### 4. Datascape's System Claims Are Not Drawn To Both a Method and an Apparatus.

Sprint summarily argues that claims 2, 99, and 100 of the '259 Patent, claims 9 and 16 of the '269 Patent, claim 19 of the '845 Patent, claim 1 of the '908 Patent, and claim 10 of the '967 Patent are indefinite because they are drawn to both a method and an apparatus. Sprint does not provide any clear and convincing evidence to support its argument. Indeed, Sprint does not even quote any of the claim language or point out how these claims are purportedly drawn to both system and method claims, other than a reference to the use of the word "communicating." As discussed above, the use of "communicating" as a functional limitation in a system claim does not make it indefinite. *See Ricoh Co.*, 486 F. Supp.2d at 402 (noting that courts have found "that claims containing both a physical description of an apparatus and a description of the apparatus' function, e.g., 'communicates,' 'populates,' 'configured to,' and 'upon activation,' were not impermissible apparatus-method claims"). Accordingly, Sprint has failed to demonstrate that

---

interpreted to disclose how to build a system described in the independent claims, that exception is not applicable.

27

these claims are invalid for indefiniteness.

### C.   Claims Drawn to Client Programs and Claims Including a Client Program and Web Server Recite Sufficient Structure.

#### 1.   A Client Program Is Structure.

Sprint suggests that claims 41 and 44 of the '259 Patent and claims 38, 40, 48, and 50 of the '269 Patent are indefinite because they are drawn to a client program, which Sprint claims is incapable of incorporating structure. Sprint is wrong.

The parties agree that "client program" should be construed as "a program that requests or accesses services or resources from a server." Patent Local Rule 6.3 Joint Claim Construction Statement (Dkt. No. 36) at 2. As discussed in Datascape's claim construction briefs, under the applicable law, software code is sufficient structure such that § 112 ¶ 6 is not implicated.[8] *Affymetrix, Inc. v. Hyseq, Inc.*, 132 F. Supp.2d 1212, 1232 (N.D. Cal. 2001) (finding that "computer code" is sufficient structure); *Trading Tech. Int'l v. Espeed, Inc.*, No. 04 C 5312, et al., 2006 WL 3147697, at *12-13 (N.D. Ill. Oct. 31, 2006) (finding that "program code" is sufficient structure); *Aloft Media, LLC v. Adobe Systems Inc.*, 570 F.

---

[8] While the phrase "client program" does not implicate § 112 ¶ 6, Datascape acknowledges that the "means for" elements of claim 41 of the '259 Patent ***does*** implicate § 112 ¶ 6. In those elements, the corresponding structure is the code that, when executed, performs the claimed function.

Supp.2d 887, 897-98 (E.D. Tex. 2008) (finding that "computer code" is sufficient structure); *Versata Software, Inc. v. SAP America, Inc.*, No. 2:07-CV-153, 2009 WL 1408520, at *16 (E.D. Tex. May 19, 2009) (finding that "computer readable program code" is sufficient structure). Similarly, here, it is sufficient structure such that § 112 ¶ 2 is not implicated.

While a patent claim must recite the structural relationship of all essential elements, "[i]f the system is one for which the relationship of elements is conventional and commonly known, the Court can take notice of a relationship, even if one is not stated." *Acacia Media Techn. Corp. v. New Destiny Internet Group*, 405 F. Supp.2d 1127, 1138 (N.D. Cal. 2005). Moreover, "[t]he determination of whether a claim is invalid for indefiniteness depends on whether those skilled in the art would understand the scope of the claim when read in light of the specification." *Billingnetwork*, No. 8:04-CV-1515-T-27MAP, 2006 U.S. Dist. LEXIS 5995, at *46-47 (citing *Verve*, 311 F.3d at 119-20; *Atmel Corp.*, 198 F.3d at 1378 (citing *North Am. Vaccine*, 7 F.3d at 1579)).

In *Billingnetwork*, the court rejected the defendant's contention that a claim using the phrase "appropriate application software" was indefinite. While the defendants' expert opined that one of ordinary skill would not be able to discern from the specification what constitutes "appropriate software," plaintiff's expert

29

opined that "every major database system available on the marketplace had certain inherent tools built into their infrastructures that would allow 'appropriate application software' to be utilized." *Id.* at *47. This was supported by the specification.

Similarly, with respect to the client program utilized in the claims Sprint argues are indefinite, the term "client program" has a particular structure and meaning recognizable to a person of ordinary skill in the field of computer systems and networking.  Putnam Aff.  ¶ 27, 40. Specifically, a person of ordinary skill in the art would know and understand that a client program is software implemented on a computer system. *Id.* at ¶ 40. Such software is commonly known as "source code" and is translated from a human-readable programming language into machine readable and executable instructions and data called "object code" through a process called "compiling." *Id.*

Source code is typically comprised of statements and declarations in a human-readable programming language used by the program developers and is typically stored in text files on a computer system used for software development. *Id.* at ¶ 41. Object code is typically binary information comprised of compiled program source code instructions and data, and is also typically stored in files on a computer until loaded into memory for execution. *Id.* Software is thus embodied in

30

physical form by both its source code stored in files on computers used to write and edit the software and by the compiled object code stored in the memory of a computer and executed on its processor. *Id.* at ¶¶ 41, 44.

Sprint's suggestion that a client program lacks structure is incorrect and inconsistent with how a person of ordinary skill in the art would understand the claims at issue. Therefore, claims 41 and 44 of the '259 Patent and claims 38, 40, 48, and 50 of the '269 are sufficiently definite, and Sprint's motion to invalidate these claims should be denied.

> **2.      Claims Incorporating a Client Program Without Limiting the Device Upon Which the Client Program Can Execute Are Not Indefinite.**

Sprint argues that claims 2, 99 and 100 of the '259 Patent, claims 9, 16, 35-37, and 45-47 of the '269 Patent, and claim 1 of the '908 Patent are indefinite because they do not specify the device on which the claimed client program executes. Sprint's argument fails for two reasons. First, the claims need not be limited to a client program executing on a particular device. Where a claim does not limit the device upon which the client program executes, the absence of that limitation renders the claim broader in scope, not indefinite.

Second, one of ordinary skill in the art would read the claims in context and would be able to identify where the client program may reside in a particular

system. *See* Putnam Aff., ¶ 30. As discussed above, "[t]he determination of whether a claim is invalid for indefiniteness depends on whether those skilled in the art would understand the scope of the claim when read in light of the specification." *Billingnetwork*, No. 8:04-CV-1515-T-27MAP, 2006 U.S. Dist. LEXIS 5995, at *46-47 (citations omitted).

The specification of the Datascape patents describes a client program which communicates with a server over an open network such as the Internet. Putnam Aff. ¶ 28 (citing JX "1," '845 patent at 5:35-64; 10:26-33 and 10:46 – 11:9). The client program is software (sometimes referred to as program code or computer code) and may reside and execute either on the non-standard I/O device itself, or on a personal computer or other device through which the non-standard I/O device is coupled to the open network. *Id.* at ¶¶ 28 (citing JX "1," '845 patent at 6:62-65; 2:34-39; 13:14-20); 29. Figure 1 of the specification illustrates this, showing non-standard I/O devices such as PDAs, screen phones, and smart card readers connected either directly or indirectly to the open network. *See* JX "1," '845 Patent, Figure 1. Therefore, if the claim does not specify where the client program resides, one of ordinary skill in the art would know from the specification that the client program can execute either on the non-standard I/O device or on an intermediary computer. Putnam Aff., ¶ 30.

Because a person of ordinary skill in the art could determine where the claimed client program would reside in the context of the claim, claims 2, 99 and 100 of the '259 Patent, claims 9, 16, 35-37, and 45-47 of the '269 Patent, and claim 1 of the '908 Patent are not invalid as indefinite.

### 3.    A Web Server Is Structure.

As it argues with respect to claims incorporating a client program, Sprint contends claims 1, 9, 10, 14, 16, 17, 21, 35, 38, 41, 42, 45, 48, 51, and 52 of the '269 Patent are indefinite because they fail to identify any physical structure corresponding to the claimed web server. Again, Sprint ignores the fact that the parties have agreed that a web server is a program, and a program is sufficient structure. *See*, *e.g.*, *Affymetrix*, 132 F. Supp.2d at 1232 (finding that "computer code" is sufficient structure); *Trading Tech.*, No. 04 C 5312, et al., 2006 WL 3147697, at *12-13 (finding that "program code" is sufficient structure); *Aloft Media*, 570 F. Supp.2d at 897-98 (finding that "computer code" is sufficient structure); *Versata Software*, No. 2:07-CV-153, 2009 WL 1408520, at *16 (finding that "computer readable program code" is sufficient structure).

The parties agree that the term "server" means "a programmed computer that provides access to services or resources by responding to requests from clients." Patent Local Rule 6.3 Joint Claim Construction Statement (Dkt. No. 36) at 6. The

33

parties also agree that a "web server" is a program, but disagree with respect to the nature of that program. *See* Joint Claim Construction Statement, Exhibit A - Parties' Proposed Claim Constructions (Dkt. No. 36-2) at 5. As in the case of the client program discussed above, a person of ordinary skill in the art would know that the web server is embodied as both source code and object code stored in the memory of a computer system. Putnam Aff., ¶ 45. Therefore, Sprint's argument that claims implementing or involving a web server are indefinite for lack of structure fails, and its motion for summary judgment with respect to these claims should be denied.

### D.    None of the Remaining Claim Terms Indentified by Sprint are Indefinite.

As discussed above, Datascape's patent claims are presumed valid. 35 U.S.C. §282. Datascape's claim terms are also presumed to be definite. *Honeywell*, 341 F.3d at 1338-39 ("Because a claim is presumed valid, a claim is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'") (internal citation omitted). The claim terms at issue are indefinite only if Defendants present clear and convincing evidence that the terms at issue are not amenable to construction or are "insolubly ambiguous." *Young*, 492 F.3d at 1346. "If the meaning of the term is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will

34

disagree, [courts] have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Datamize*, 417 F.3d at 1347 (internal quotes and citation omitted).

In this case, all but one of the claim terms that Sprint accuses as being indefinite have been construed by this very Court:

| Non-standard I/O Device | An input/output device that (1) either interfaces to a computer through a communications port that was not normally used for networks as of June 22, 1995, or has limited input and output capabilities, and (2) was not supported by open network protocols published or publicly available as of June 22, 1995, or earlier. JX "13," Special Master's Claim Construction Report at 99. |
|---|---|
| Client Program | A program that requests or accesses services or resources from a server. *Id.* at 257. |
| Coupled/Coupling | Connected/connecting directly or indirectly. *Id.* at 133. |
| Telephone | A communication device that transmits and receives sound in the form of electrical signals. In the context of claims 9-15, 35, 38 & 41-42 of the '269 patent; and claims 97-104 of the '259 patent, an "extended Internet protocol" or "extended Internet protocol statements" are used to provide communication with the "telephone." *Id.* at 146. |

| Screen Phone | A non-standard I/O device combining a telephone with a display screen.<br><br>*Id.* at 187. |
|---|---|
| Computer | A programmable electronic device that can accept, store, process and output data.<br><br>*Id.* at 183. |

Given that this Court has construed the claim terms, Sprint's suggestion that the terms are not amenable to construction or are insolubly ambiguous must fail.

Notably, the parties have agreed "that the term 'client program,' as used in the claims of the Datascape patents, should be construed to mean: 'a program that requests or accesses services or resources from a server.'" Patent Local Rule 6.3 Joint Claim Construction Statement (Dkt. No. 36) at 2. The parties have also agreed that "'communicate,' as used in the claims of the Datascape patents, should be construed to mean: 'to transfer information among entities,'" and "'communicatively coupled' should be construed as the combination of the parties' agreed construction of the term 'Communicate' and the Court's construction of the disputed claim term 'Coupled.'" *Id.* at 3-4. Sprint did not indicate that it intended to challenge any of these terms as indefinite. *See id.* Indeed, of the seven claim terms Sprint now claims are indefinite, Sprint only indicated that it was reserving its rights to bring a motion to find the claim terms "non-standard I/O device" and

"coupled/coupling" indefinite. Joint Claim Construction Statement, Exhibit C –
Sprint's 6.3(b)2 Proposed Claim Constructions With Identifications of References
(Dkt. No. 36-4) at 1-2 ("non-standard I/O device"), 6 ("coupled/coupling"). For the
other terms, Sprint simply offered a proposed construction different than
Datascape's. *Id.* at 4 ("extended"), 6-7 ("telephone," "web server," "computer,"
and "screen phone").

### 1.    Extended

"Extended" is the only term at issue in Sprint's motion for which the Court
has not yet adopted a construction. Datascape has proposed that the term
"extended" be defined to mean "modified through additions in order to expand in
scope or application." *See* Patent Local Rule 6.3 Joint Claim Construction
Statement, Exhibit B – Datascape, Inc.'s Patent L.R. 6.3(b)(2) Proposed Claim
Constructions and Identification of Intrinsic Evidence (Dkt. No. 36-3) at 7-8.
Sprint argues that Datascape's construction would expand the claims "to the point
where it is no longer possible to determine how many protocols the asserted
patents could cover."[9] Sprint Memo. at 28. However, Datascape's construction is

---

[9] Notably, in contending that the word "extended" is indefinite, Sprint argues that
Datascape's proposed construction "does not reasonably define the limitations of
'extended,'" and that "any protocol with additions could fall under this definition
as being 'expanded in scope or application.'"  Sprint Memo. at 30. In making this
argument, it seems that Sprint's challenge is not to the word "extended," but to the

clear: if a protocol has been modified through additions in order to expand in scope or application, that protocol has been "extended."  Sprint's insistence on construing the word "extended" separately, rather than as part of the larger phrases within which it appears, represents an attempt to manufacture confusion where none exists.

As set forth in Datascape's Rule 6.5(a) Opening Claim Construction Brief, the word "extended" should be construed as part of the phrases within which it exists, *e.g.*, "extended open network protocol." Datascape's Rule 6.5(a) Opening Claim Construction Brief (Dkt. No. 40) at 11. When construed as part of the phrase "extended open network protocol," it is apparent that "extended" is an adjective used to describe a protocol that existed before the filing date of the '845 patent which has been modified through additions in order to support communication between a server and a non-standard I/O device.  *See* Putnam Aff., ¶ 19.

Contrary to Sprint's argument otherwise, "extended" is not insolubly

---

phrase "extended open network protocol." Indeed, by challenging this one word, Sprint implicitly seeks to render indefinite all phrases that include the word "extended," *e.g.*, "extended open network protocol," "extended open network protocol statements," "extended Internet protocol," "extended Internet protocol statements." *See id.* at 28-29. Sprint does not, however, separately argue that these phrases are indefinite.  In fact, Sprint has proposed constructions for these phrases and the Court has adopted constructions of these phrases. Thus, these phrases are amenable to construction and are not insolubly ambiguous.

38

ambiguous and Datascape's proposed construction is supported by the patent specification. The patent specification teaches that a previously existing protocol is extended by making additions to that protocol to support communication between a server and a non-standard I/O device. Putnam Aff., ¶ 17 (citing JX "1," '845 Patent at 5:35-58). Exemplary protocols are extended according to the principles of the Datascape patents as discussed in detail in the patent specification. *Id.* at ¶ 18. Figure 2 of the patent specification shows a number of exemplary extensions to support communication between a web server and devices identified in the specification as exemplary non-standard I/O devices. *Id.*; *see also* JX "1," '845 Patent, Figure 2. The associated text describes the addition of new attribute values to HTML. Putnam Aff., ¶ 18. These extensions are used in the specification to identify particular non-standard I/O devices and operations to be performed with them. *Id.* Data obtained from these devices are communicated over the Internet to the web server for processing. *Id.*

The preferred embodiment described in the specification uses HTML and HTTP, protocols that existed prior to the filing date, as examples. *Id.* at ¶ 18. Extensions, as illustrated in Figure 2, are elements that are added to these pre-existing protocols to support communication between a server and I/O devices such as those illustrated in Figure 1. *Id.* Figures 4-11 describe the algorithms for

processing these extensions, and Figures 13A through 22B show the results of this processing. *Id.* In various examples and embodiments, the extensions are used to identify devices such as a magnetic card reader, a smart card reader, and a credit card terminal, as well as other exemplary non-standard I/O devices. *Id.*

Contrary to Sprint's argument that there is no disclosure in the patent or prosecution history that would tell one of ordinary skill in the art how to construct every possible extended open network protocol, the specification provides a detailed description of a preferred embodiment illustrating the extension of HTML through the addition of new tags, attributes, and values to HTML commands. *Id.* at 21. It also lists FTP, SMTP, POP, Telnet, and HTTP as other protocols that could be extended using the same methods. *Id.* (citing JX "1," '845 Patent at 6:5-8, 3:26-29, and 20:4-8). A person of ordinary skill in the art would understand that there are many other open network protocols similar to the ones listed in the patent claims and specification that could also be extended according to the principles taught and illustrated in the Datascape patents in order to support client/server communication using non-standard I/O devices. *Id.*

Sprint has asserted that the extensions of the Datascape patents "must enable communication that is otherwise unavailable," quoting selectively from the prosecution history of the patents. Sprint Memo. at 29. However, Sprint

40

misconstrues the meaning of communication, first by equating it to connectivity and then by limiting it to the communication of "QWERTY-type text." The Datascape patents are directed to supporting particular types of communication between servers and clients, ***not*** to connecting I/O devices to a network. *See* Putnam Aff., ¶ 22. Moreover, with respect to Sprint's "QWERTY-type text" argument, as discussed in Datascape's Patent Local Rule 6.5(b) Responsive Claim Construction Brief (Dkt. No. 45) at 10-12, Sprint improperly focuses on the ***nature*** of the data being communicated rather than the ***way that the data are input or output*** by the non-standard I/O device or ***the way that such devices interact with a user***, as discussed below. *See* Putnam Aff., ¶ 22.

### 2.    Non-Standard I/O Device

Sprint argues that the construction of "non-standard I/O device" already adopted by this Court in the related Kyocera et al. matters and proposed by Datascape in this matter is "vague, ambiguous and blurs the critical distinction between standard I/Os and non-standard I/Os." Sprint Memo. at 31. It is not, however, this Court's construction that is unclear; rather, Sprint's confusion is a result of its inability or refusal to appreciate the difference between the I/O capability of a device and the data entered into or received by that device.

The specification clearly sets out the characteristics of non-standard I/O

41

devices, and they are enumerated in Datascape's proposed construction:

> An input/output device that (1) either interfaces to a computer through a communications port that was not normally used for networks as of June 22, 1995, or has limited input and output capabilities, and (2) was not supported by open network protocols published or publicly available as of June 22, 1995, or earlier.

*See* JX "1," '845 patent at 4:4-14, 9:60-10:9, and Abstract:2-6. The specification clearly conveys that the term refers to devices that interface with a PC through a port not normally used for networking, or have limited I/O capabilities, and that were not supported for communication using the Internet prior to June 1995.[10] Putnam Aff., ¶ 23 (citing JX "1," '845 patent at 4:4-12, 4:35-39, 4:52-54, 5:22-27, 6:8-20, and 9:60-10:9).

Sprint also argues that the term non-standard I/O device would render the relevant claims indefinite because "according to Datascape, a non-standard I/O device can extend to include a standard I/O device" if it is capable of providing data in the form of text that could be entered with a keyboard. *See* Sprint Memo. at 33. This is a gross misreading of the patent specification, as well as Datascape's proposed construction and supporting arguments.

---

[10] Indeed, this Court recognized in its claim construction ruling in the related matters, that a key distinction between standard and non-standard I/O devices relates to what devices are supported by existing internet protocols. *See* JX "13," Special Master's Claim Construction Report at 47-49.

Though it is illustrated in detail in the specification, the Defendants ignore the fact that a non-standard I/O device such as a magnetic card reader or smart card reader would typically provide the same type of ***data*** that a person could enter with a standard QWERTY keyboard on a PC. Putnam Aff., ¶ 25. It was well known to persons of skill in the art in 1995 (and well-illustrated in the patent specification) that information such as customer name, address, credit card number, and so forth, would be stored on the magnetic stripe of a credit or debit card or in the memory of a smart card. *Id.* (citing JX "1," '845 Patent at 18:65-19:63, and Figures 14-23). It could also be stored in the form of a bar code on a label, or in the memory of a PDA, screen phone, or credit card terminal. *Id.* (citing JX "1," '845 Patent at 8:1-19:63, and Figures 1, 2, and 4-23). All of these examples are illustrated and described in detail in the figures and text of the patent specification. *Id.*

One of the distinguishing features of non-standard I/O devices is the ***way*** that data are entered by or displayed to a user. *Id.* at ¶ 26 (citing JX "1," '845 Patent at 4:4-15). According to the teachings of the patents, data may be input by actions such as scanning a bar code, swiping a magnetic card, or inserting a smart card into a reader. *Id.* (citing JX "1," '845 Patent, '845 Patent at 4:1-5:18, 4:35-42, 6:28-53, 7:7-8, 12:5-39, 13:55-65, 15:64-16:12, 18:65-19:63, and Figures 14-19).

In contrast, data entry through a standard I/O device such as a PC would typically be entered using a standard QWERTY keyboard. *Id.* (citing JX "1," '845 Patent at 3:54-67, 4:4-15, and 11:12-16). In either case, for transactions such as those described in the patent specification, the data would typically be ASCII text (which the Defendants incorrectly refer to as "QWERTY-type text") such as customer or order information, as illustrated in the patent specification. *Id.* (citing JX "1," '845 Patent at 18:65-19:63 and Figures 2 and 14-23).

Citing the Federal Circuit's *Halliburton Energy* opinion, Sprint argues that "non-standard I/O device" is indefinite "because it allows coverage of technology not invented as of the '845 patent's filing date, turning the patent claims into a moving target." Sprint Memo. at 33-34. Neither the *Halliburton Energy* case, nor any existing case law, supports this argument.[11]   Inventions, by definition, cover

---

[11] In the *Halliburton Energy* case, the issue was whether the claimed invention, "fragile gel," was sufficiently definite. The court determined that the patent at issue failed to distinguish what was claimed from the close prior art and "did not place any limit on the scope of what was invented beyond the prior art." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1253 (Fed. Cir. 2008). The court noted that "[w]hile patentees are allowed to claim their inventions broadly, they must do so in a way that distinctly identifies the boundaries of their claims." *Id.* The patentee in *Halliburton Energy* failed to "identify the degree of the fragility of its invention" so that its "proposed definition would allow the claims to cover not only that which it invented that was superior to the prior art, but also all future improvements to the gel's fragility." *Id.* Here, the term "non-standard I/O device" does not suffer from the same defects as the "fragile gel" in *Halliburton Energy.*

technology not invented as of the date of the patent.  Subsequent technology that uses the invention infringes.  While the term "non-standard I/O device" is broad, it is not indefinite.  It properly captures devices that meet the definition set forth in the specification, irrespective of when those devices came to be. Indeed, Datascape does not claim to have invented non-standard I/O devices; its patent specification simply seeks to define non-standard I/O devices and apply its invention to them. This claim term is not insolubly ambiguous. It has been construed by this very Court, and Sprint's motion with respect to this term should be denied.

### 3.    Client Program

Notwithstanding the facts that Sprint agreed to the construction of "client program," without indicating an intent to reserve its right to challenge the definiteness of the term, and that this Court has construed this term, Sprint now argues that the term is indefinite. Sprint's argument seems to be based not on whether the term "client program" is susceptible to construction, but rather on Sprint's argument that "coupling" a client program to a non-standard I/O device makes it impermissibly indefinite. Sprint's argument turns, in part, on its inaccurate assertion that a client program is not structure.

As discussed above, the term "client program" has a particular structure and meaning recognizable to a person of ordinary skill in the field of computer systems

and networking.  Putnam Aff.  ¶ 27, 40. Specifically, a person of ordinary skill in the art would know and understand that a client program is software. *Id.* at ¶ 40. Moreover, and as also discussed above, one of ordinary skill in the art would know from the specification that the client program can execute either in the non-standard I/O device or on an intermediary computer. *Id.* at ¶¶ 29-30.

Sprint posits scenarios in which, if the Court's and Datascape's construction is upheld, the phrase "client program" would purportedly render the claims in which it is used indefinite.  Sprint Memo. at 36-38. First, Sprint seems to point to claims which recite a client program located within a telephone and include a limitation that the client program is for communicating data with the telephone.[12] One of ordinary skill in the art would understand these claims to mean that the telephone uses the client program to communicate data.  Putnam Aff., ¶¶ 31-33.

Second, Sprint points to claims that recite a system comprising a telephone and a client program. Sprint seems to argue that these claims are indefinite because the claims do not recite a personal computer upon which the client program may reside. These claims are not rendered indefinite by the absence of a personal

---

[12] Inexplicably, Sprint cites claim 19 of the '845 patent, which does not recite a telephone and does not include the described limitation. Sprint also references claim 99 of the '259 Patent. However, claim 97 of the '259 Patent includes a telephone and a "client program for communicating data with the telephone."

46

computer. As discussed above, these claims are infringed if the accused system includes a telephone and a client program, irrespective of where that client program resides. And one of ordinary skill in the art, based upon the teachings of the specification, understands that the client program may reside on the telephone or on an intermediary device such as a personal computer. Putnam Aff., ¶ 30. These are common sense, reasonable interpretations of these claims. Sprint's attempt to construe them in a way that removes them from the realm of common sense should be rejected.  *See Young*, 492 F.3d at 1346 ("Claims are considered indefinite when they are 'not amenable to construction or are insolubly ambiguous. . . . Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning.").

### 4.   Coupled/Coupling and Communicatively Coupling

Sprint argues that this Court's construction of "coupled/coupling" – which Datascape has proposed in this matter – "is inconsistent with the use of the terms in the claims." Sprint Memo. at 38. Sprint's argument in support of finding this term indefinite is essentially the same as the argument it raised in claim construction. Namely, Sprint wants to unnecessarily limit how coupling occurs even though each

individual claim provides that information.[13]

In support of its argument, Sprint cites to claim 99 of the '259 patent and complains that "there is no practical way for the client to communicate data to the telephone (or personal computer) without having corresponding physical structure to anchor the program." Sprint Memo. at 39. Claim 99 of the '259 Patent states:

> A system for telephone communication over an open network comprising: a telephone; and a client program communicatively coupled to the telephone, the client program for communicating data with the telephone and for processing extended Internet protocol statements to support communication with the telephone over an open network.

Again, Sprint seems to argue that the client program is not structure. As discussed above, a client program is structure. As also discussed above, the specification clearly sets forth the devices upon which that client program may reside.

### 5. Telephone and Screen Phone

Sprint argues that the terms "telephone" and "screen phone" are indefinite. These terms are not, however, insolubly ambiguous since they are clearly susceptible to construction, and have already been construed by this Court in the

---

[13] The parties agree that coupled means "connected/connecting directly or indirectly," and the claims themselves describe how and where the coupling occurs. *See* JX "1," '845 Patent, claim 1 ("An open network processing system comprising: a server for communicating in an extended open network protocol; and a plurality of input/output (I/O) devices **coupled** to said server through an open network . . .").

48

related matters.

In support of its indefiniteness argument, Sprint suggests that confusion is created because a screen phone is a non-standard I/O device and a telephone may be either a standard or non-standard I/O device. It is not clear on what evidence Sprint bases this argument.

Datascape has proposed this Court's construction of telephone:

> A communication device that transmits and receives sound in the form of electrical signals. In the context of claims 9-15, 35, 38 & 41-42 of the '269 patent; and claims 97-104 of the '259 patent, an "extended Internet protocol" or "extended Internet protocol statements" are used to provide communication with the "telephone."

JX "13," Special Master's Claim Construction Report at 146. The construction of telephone does not, on its face, answer the question of whether a telephone is a non-standard I/O device. For it to be a non-standard I/O device, a telephone would have to meet the above definition and also meet the following criteria (assuming the Court adopts the same construction used in the related cases):

> An input/output device that (1) either interfaces to a computer through a communications port that was not normally used for networks as of June 22, 1995, or has limited input and output capabilities, and (2) was not supported by open network protocols published or publicly available as of June 22, 1995, or earlier.

*Id.* at 99.

In contrast, Datascape proposes that screen phone be construed as "a nonstandard I/O device comprising a telephone with a display screen."[14] Thus, a screen phone must be a non-standard I/O device, but it is also still a telephone.[15] *See* Putnam Aff., ¶ 36. The patent describes "[s]creen phone terminals [as] devices which integrate a telephone with an ATM-like device and possibly a magnetic card swipe reader." JX "1," '845 Patent at 1:28-30. Such devices "typically include a modem which converts the digital messages of the remote terminal into frequency modulated analog signals which may be transmitted over telephone lines to a modem at the central processing system." *Id.* at 2:8-13. This screen phone terminal is a telephone with ATM and magnetic card reader capabilities. *Id.* at 1:28-30.

In addition, there is no support for Sprint's suggestion, on page 34 of its brief, that a telephone is a "simple" device, while a screen phone was a "much more sophisticated device." *See* Putnam Aff., ¶ 37. The specification of the patents

---

[14] The Court previously construed screen phone as "a nonstandard I/O device combining a telephone with a display screen." JX "13," Special Master's Claim Construction Report at 187.

[15] Datascape does not agree that *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258 (Fed.Cir. 2001), demands a different result. The fact that the words "rate" and "mode" in that case were identified as two distinct concepts in the patent at issue is not relevant here. Here, a screen phone is a non-standard I/O device comprising (or combining) a telephone and a display screen. Since a screen phone is comprised, in part, of a telephone, these are not two completely distinct terms. Rather, unlike the terms in *Bell Atlantic*, they are very much related.

in suit describes the use of telephones and telephone connections in data transaction systems. *See* JX "1," '845 Patent. A number of these types of telephone systems, including ISDN, for example, employed specific types of telephone sets that sometimes included a microprocessor and/or a small display screen along with the telephone keypad. Putnam Aff., ¶ 34 (citing '845 Patent at 13:13-19). Further, a number of devices such as credit card terminals and screen phones which combine a telephone with additional components are described in the patent specification and were commonly used in 1995 to communicate with remote servers and carry out various types of transactions and data operations. *Id.* (citing JX "1," '845 patent, 1:24-33, 2:49-52, 6:41-46, and Figures 1 and 13A). Some of these telephones and devices incorporated a microprocessor and memory capable of executing a client program as described in the patent specification. *Id.* A person of ordinary skill in that art in 1995 would have been aware that a variety of types of telephones, including wireless telephones, such as cellular telephones, and screen phones such as picture phones and screen phone terminals, as well as ISDN telephones, credit card terminals, and POS terminals, existed prior to 1995 and could be used for communication, including the communication of digital information, such as computer data, in addition to analog information, such as

voice or audio data. *Id.* at ¶ 35.

Further, Datascape's proposal that a screen phone "comprises" a telephone and a display screen would not render the term indefinite. Rather, as explained in Datascape's claim construction briefing, Datascape's proposed construction is supported by the intrinsic and extrinsic evidence.

The intrinsic and extrinsic evidence cited by Datascape establishes that a screen phone has ***at least*** a telephone and a display screen. *See* Patent Local Rule 6.3 Joint Claim Construction Statement, Exhibit B – Datascape, Inc.'s Patent L.R. 6.3(b)(2) Proposed Claim Constructions and Identification of Intrinsic Evidence (Dkt. No. 36-3) at 35-36; JX "13," Special Master's Claim Construction Report at 186. As the Special Master explained in the related matters, "[w]hether a 'screen phone' would have been understood by an artisan, at the time of invention, to ***necessarily*** combine more than a telephone and a display screen, is unclear on the present record; nonetheless, there appears to be no dispute that a 'screen phone' includes ***at least*** a telephone and a display screen." JX "13," Special Master's Claim Construction Report at 186-87 (emphasis added). Based on the Special Master's finding, the use of the word "comprising" in the construction "a non-standard I/O device comprising a telephone with a display screen" is accurate. "'Comprising' is a term of art used in claim language which means that the named

52

elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genetech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) (citing *In re Baxter*, 656 F.2d 679, 686 (C.C.P.A. 1981)).[16]

### 6.   Computer

Sprint claims that the Court's construction of the term "computer," which Datascape has proposed apply in this case – "a programmable electronic device that can accept, store, process and output data" – "is so broad as to be indefinite because it does not disclose how to discern a computer that would be a standard I/O device from one that is a non-standard I/O device." Sprint Memo. at 45. Again, whether a device is a non-standard I/O device depends on whether it meets the Court's construction of non-standard I/O device, not computer. A non-standard I/O device may be a computer if it is a programmable electronic device that can accept, store, process and output data.

Indeed, one of ordinary skill in the art in 1995 would have understood  from the patent specification that a computer such as a personal computer equipped with a "standard keyboard" or "standard QWERTY keyboard" and a "standard monitor"

---

[16] Datascape agrees that the Court's construction of screen phone in the Kyocera et al. matters ("a nonstandard I/O device combining a telephone with a display screen") is also supported by the intrinsic record.  Datascape does not oppose the adoption of that construction should the Court choose to do so.

or "standard monitor screen"  and used for data input and output is described as a *standard* I/O device, while certain other types of computers used for data input and output, such as a smart card reader, PDA, screen phone terminal, and credit card terminal, are clearly identified as ***non-standard*** I/O devices. Putnam Aff., ¶ 38 (citing JX "1," '845 Patent at 3:54-67, 4:4-14, 4:35-54,  5:23-27, 9:60-10:8, 11:12-16, and 13:7-19). It is clear from the patent specification that the distinction between standard and non-standard I/O devices is <u>not</u> based on the type of computer incorporated in the devices – instead, it is based on specific characteristics of standard and non-standard I/O devices listed in the patent specification. *Id.*

As shown in Figure 1 and taught in the patent specification, a non-standard I/O device can be coupled to any of a variety of computers, including both personal computers (characterized in the specification as "standard I/O devices") and the many computer-based non-standard I/O devices described in the specification, such as credit card terminals, screen phone terminals, and PDAs. *Id.* at ¶ 39 (citing JX "1," '845 patent at 5:48-53); *see also*, JX "1," '845 patent at 9:60-10:6.

## IV.   <u>CONCLUSION</u>

For at least the above-stated reasons, Sprint has failed to prove by clear and convincing evidence that any of the claim terms at issue are not amenable to

construction or are "insolubly ambiguous."  As a result, Sprint's motion for summary judgment should be denied as a matter of law.

This 25th day of January 25, 2010.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

*/s/Heidi H. Raschke*
A. James Anderson
Georgia Bar No. 016300
Marla R. Butler
Georgia Bar No. 099917
J. Scott Culpepper
Georgia Bar No. 200950
Heidi H. Raschke
Georgia Bar No. 594937
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA 30326-1119
Telephone:  404.760.4300
Facsimile:  404.233.1267
Email: ajanderson@rkmc.com
Email: mrbutler@rkmc.com
Email: jsculpepper@rkmc.com
Email: hhraschke@rkmc.com

William J. Rocha, admitted *pro hac vice*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Telephone:  617.859.2769
Facsimile:  617.267.8288
Email: wjrocha@rkmc.com

Attorneys for Plaintiff, Datascape, Inc.

30337267.2

## <u>CERTIFICATION OF PAGE AND TYPE LIMITATIONS</u>

Subject to Datascape Inc.'s Motion for Page Limit Extension for Datascape Inc.'s Response in Opposition to Sprint Spectrum, L.P. and Sprint Solutions, Inc.'s Motion for Summary Judgment of Invalidity of Certain of Datascape's Patent Claims for Failure to Comply With 35 U.S.C. § 112 ¶ 2, the undersigned hereby certifies that this Brief complies with Local Rule 5.1C.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Heidi H. Raschke*
A. James Anderson
Georgia Bar No. 016300
Marla R. Butler
Georgia Bar No. 099917
J. Scott Culpepper
Georgia Bar No. 200950
Heidi H. Raschke
Georgia Bar No. 594937
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA 30326-1119
Telephone:  404.760.4300
Facsimile:  404.233.1267
Email: ajanderson@rkmc.com
Email: mrbutler@rkmc.com
Email: jsculpepper@rkmc.com
Email: hhraschke@rkmc.com

William J. Rocha, admitted *pro hac vice*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Telephone:  617.859.2769
Facsimile:  617.267.8288
Email: wjrocha@rkmc.com

30337267.2

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DATASCAPE, INC.,                    )
a Georgia Corporation,              )
                                    )      Civil Action File No.:
    Plaintiff,  )      No. 1:09-CV-0136-CC
                                    )
v.                                  )      **JURY TRIAL DEMANDED**
                                    )
SPRINT SPECTRUM, L.P.               )
    a Delaware Limited Partnership, and   )
                                    )
SPRINT SOLUTIONS, INC.              )
    A Delaware Corporation,   )
                                    )
Defendants.                         )
                                    )

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2010 I served the foregoing *Datascape, Inc.'s Response in Opposition to Sprint Spectrum, L.P. and Sprint Solutions, Inc.'s Motion for Summary Judgment of Invalidity of Certain of Datascape's Patent Claims for Failure to Comply with 35 U.S.C. § 112 ¶ 2* via the Court's CM/ECF system upon the following:

57

Steven W. Hardy, Esq.  
STEVEN W. HARDY, LLC  
800 Johnson Ferry Road  
Atlanta, Georgia  30342-1417

Franklin E. Gibbs, Esq.  
Erick P. Wolf, Esq.  
WANG, HARTMANN, GIBBS &  
CAULEY P.C.  
1301 Dove Street, Suite 1050  
Newport Beach, California 92660-2484

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Heidi H. Raschke*  
A. James Anderson  
Georgia Bar No. 016300  
Marla R. Butler  
Georgia Bar No. 099917  
J. Scott Culpepper  
Georgia Bar No. 200950  
Heidi H. Raschke  
Georgia Bar No. 594937  
2600 One Atlanta Plaza  
950 East Paces Ferry Road, N.E.  
Atlanta, GA 30326-1119  
Telephone:  404.760.4300  
Facsimile:  404.233.1267  
Email: ajanderson@rkmc.com  
Email: mrbutler@rkmc.com  
Email: jsculpepper@rkmc.com  
Email: hhraschke@rkmc.com

William J. Rocha, admitted *pro hac vice*  
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.  
800 Boylston Street, 25th Floor  
Boston, MA 02199  
Telephone:  617.859.2769  
Facsimile:  617.267.8288  
Email: wjrocha@rkmc.com

Attorneys for Plaintiff, Datascape, Inc.